**ADAMS v. BENNETT et al. (No. 1820.)\***

(Court of Civil Appeals of Texas. El Paso. March 11, 1926. Rehearing Denied April 8, 1926.)

Mines and minerals &#9758;78(2)—Lessor held entitled to cancellation of gas and oil lease where there was no development for eight months and there was but mere showing of presence of oil and gas; "produced."

Under lease which was to remain in force as long as oil or gas was produced from land by lessee and as long as development work be in progress, the word "produced" contemplated production of oil or gas in quantities susceptible of division and the payment of royalty, however small, and hence lessor was entitled to cancellation where it appeared there was but a mere showing of the presence of oil and gas, and that nothing was done for a period of eight months in the way of development.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Produce.]

Error from District Court, Pecos County; C. R. Sutton, Judge.

Suit by E. W. Bennett and others against Tom Adams and others. Judgment for plaintiffs, and defendant named brings error. Affirmed.

Howell Johnson, of Fort Stockton, and H. C. Wade, of Fort Worth, for plaintiff in error.

O. W. Williams and J. G. Montague, both of Fort Stockton, for defendants in error.

PELPHREY, C. J. Defendants in error brought this suit February 11, 1925, against J. W. Grant, the Trans-Pecos Oil Company, and Tom Adams, to cancel the following lease:

"Oil and Gas Lease.

"Agreement, made and entered into the 2nd day of May, 1922, by and between E. W. Bennett for himself and attorney in fact for J. R. Bennett, Mrs. Mettie C. Earnest, a widow, F. O. Shouse, J. H. Downs, C. C. Rollins, J. B. Davenport, Mrs. Florence L. Hines, a single woman, R. H. Smith and J. S. Oates, hereinafter called lessor (whether one or more), and J.

&#9758;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

\*Writ of error dismissed for want of jurisdiction June 9, 1926.

W. Grant, of Pecos county, hereinafter called lessee:

"Witnesseth: That the said lessor for and in consideration of one dollar and other good and valuable considerations, cash in hand and paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the lessee, to be paid, kept and performed, has granted, demised, leased and let, and by these presents does grant, demise, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas and laying of pipe lines and of building tanks, powers, stations and structures thereon to produce, save and take care of said p₋oducts, all that certain tract of land situate in the county of Pecos, state of Texas, described as follows:

"Section Five Nine Two (592) and containing 640 acres, more or less.

"It is.agreed that this lease shall remain in force for a term of 3 months from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee and as long as development work be in progress.

"In consideration of the premises the said lessee covenants and agrees:

"First: To pay to the state of Texas the one-sixteenth of the value of all oil and gas saved and sold off the premises as required by chapter 81, of the General Laws of the state of Texas.

"Second: To deliver to the credit of the lessor, free of cost, in the pipe lines to which he may connect his well an additional equal one-sixteenth part of all oil and gas produced and saved from said premises.

"If no well be commenced on said land on or before the 10th day of May, 1922, this lease shall terminate as to both parties.

"Should the first well drilled on the above-described land be a dry hole, then and in that event, if a second well is not commenced on said land, within 3 months shall terminate as to both parties.

"If said lessor owns a less interest in the above-described land than the entire and undivided fee-simple estate therein, then the royalties and rentals herein provided for shall be paid the lessor only in the proportion which * * * interest bears to the whole and undivided fee.

"Lessee shall have the right to use, free of cost, gas, oil and water produced on said land for all operations thereon except water from wells of lessor.

"When requested by lessor, lessee shall bury his pipe line below plow depth.

"No well shall be drilled nearer than 200 feet to the house or barn now on said premises without the written consent of lessor.

"Lessee shall pay for damages caused by all operations to growing crops on said land.

"Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises including the right to draw and remove casing.

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no changes in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof; and it is hereby agreed that in the event this lease shall be assigned as to a part or as to parts of the above described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rentals due from him or them, such default shall not operate to defeat or effect this lease in so far as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rental.

"Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor, by payment, any mortgages, taxes or other liens on the above-described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof.

"In testimony whereof, we sign, this the 2nd day of May, 1922. E. W. Bennett, for Himself. E. W. Bennett, Agt. and Attorney in fact for J. R. Bennett, Mrs. Mettie C. Earnest, a widow, F. O. Shouse, J. H. Downs, C. C. Rollins, J. B. Davenport, Mrs. Florence L. Hines, a single woman, R. H. Smith and J. S. Oates,"

—alleging assignments of parts of lease to the Trans-Pecos Oil Company and to Tom Adams.

As grounds for the cancellation prayed, defendants in error alleged that, while J. W. Grant and the Trans-Pecos Oil Company had drilled a well on the premises, said well had never produced oil or gas; that no attempt had ever been made to actually develop the well into a producer, and that all work had ceased on the well on or about the 15th day of February, 1924; that no new or additional well had been started on the premises and that no development work had been done on the premises since said date.

Defendants in error prayed, also, that Grant, the Trans-Pecos Oil Company, and Tom Adams be enjoined from entering upon the land, from moving any drilling rigs onto the land, and from drilling or attempting to drill thereon.

Plaintiff in error Tom Adams answered by a general demurrer, a general denial, and for special answer alleged that he was the owner and holder of the lease on part of the land, by assignment from J. W. Grant; that the well drilled by J. W. Grant and the Trans-Pecos Oil Company is a producer of oil and gas, and that therefore the lease is still valid and subsisting.

The case was tried before the court without the intervention of a jury, and a judgment was entered by the court canceling the lease and permanently enjoining Grant, Adams, and the Trans-Pecos Oil Company from entering onto the land, moving any drilling rigs thereon, or in any manner interfering with the peaceful possession of defendants in error. From that judgment Tom Adams has brought the case to this court for review by writ of error, his contention being

that the court erred in finding that oil and gas had not been found and discovered in the well in question drilled by J. W. Grant and the Trans-Pecos Oil Company, and that oil and gas had not been continuously produced therefrom since the drilling of said well was completed, within the meaning of the term of the lease in question, and that there had been an abandonment of said lease by either Tom Adams or his assignor, J. W. Grant, by means of words, conduct, or otherwise.

We find from the record that lessee, J. W. Grant, after securing the lease on said section 592, drilled a well thereon which turned out to be a water well; that shortly thereafter he commenced the drilling of another well on the property, and, while the drilling of said second well was in progress, he assigned part of his lease to the Trans-Pecos Oil Company, and that they continued the drilling of the well to a depth of about 1,100 feet; that the second well was completed, or at least drilling stopped thereon, in February, 1924; that in said second well some oil and gas were found, the exact amount of which is not clearly shown; that on the 30th day of July, 1924, J. W. Grant assigned his lease on the whole section to plaintiff in error, Tom Adams; that on or about the 12th day of November, 1924, defendant in error E. W. Bennett executed and filed for record an instrument purporting to be a cancellation of said lease, and mailed a copy thereof to J. W. Grant.

The sole question upon which a decision of this case rests, in our opinion, is whether or not the well started by J. W. Grant and finished by the Trans-Pecos Oil Company produced oil or gas as contemplated by the following provisions of the lease:

"It is agreed that this lease shall remain in force for a term of three months from this date and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee, and as long as development work be in progress."

The evidence is undisputed that there was no development work carried on by the lessee or any of his assignees after the completion of the second well in February, 1924, unless the tests that were made of the well can be considered as development, which we do not believe was the class of development contemplated by the parties at the time of the execution of the lease. Consequently, as we view the case, if the well drilled by the Trans-Pecos Oil Company did not produce oil or gas and continue so to do, then the defendants in error were entitled to a cancellation of the lease, and the rights of the plaintiff in error, Tom Adams, he doing nothing to himself carry out the conditions of the lease, must depend on what was done by the Trans-Pecos Oil Company.

The testimony of both E. W. Bennett and T. P. McSpadden shows that both oil and gas were discovered in the well, but the evidence is not clear as to the amount of either. Bennett testified that in his opinion it might produce as much as 40 barrels per day if properly operated, but that was merely an expression of opinion from a man who is not shown to be an expert in the matter of oil wells, and certainly can bear but little weight in determining the question as to the amount of oil and gas discovered. Bennett further testified that during visits to the well oil and gas both would come out of the well when the faucet would be turned on, and that oil would flow a short time and then stop; that if turned on again the same day oil would again flow a short time.

McSpadden testified that he was the driller in charge of the drilling of the well, and that in August, 1924, he bailed several bailers of oil out of the well.

Was this such production as was contemplated by the parties when they entered into the lease contract? We think not. The term "produced" means production of either oil or gas in such quantities as to be susceptible of division. Enfield v. Woods et al., 248 S. W. 842, 198 Ky. 328. In this case the Kentucky Court of Appeals, in a case involving a similar provision in a lease, had this to say:

"A mere showing of oil manifestly is not sufficient, even though produced. The production must be tangible and substantial, but it need not be great."

The parties executing this lease evidently contemplated that any production, if such there should be, would be in sufficient quantity to pay to the landowners a royalty, even though small, and did not intend that a mere showing of oil should keep the lease alive indefinitely.

The witness Bennett seemed to be of the opinion that the well in question was an oil well, but evidently the Trans-Pecos Oil Company did not so consider it, for there is nothing in the record to show that they did anything after the completion of the well to improve its production, except to make tests of it. The fact that they moved away part of their drill would tend to show that they had lost faith in the well.

The lease in question was executed on an entire section of land in May, 1922; the well in which the oil and gas was discovered was completed in February, 1924; this suit was filed on the 11th day of February, 1925, and the evidence is uncontradicted that between February, 1924, and November, 1924, there was nothing done toward developing the property.

We do not hold that a temporary cessation of development or production will subject a lease contract to cancellation, but in a case such as this, where an entire section of land is involved, and nothing is done for a period of eight months in the way of development, we are of the opinion that the landowners

are entitled to a cancellation, and this certainly would be true where the only production shown amounts to a mere showing of oil and gas.

The judgment of the trial court is affirmed.