## WARING et al. v. LOCKETT.
### No. 8678.

Court of Civil Appeals of Texas. Austin.
June 22, 1938.

Rehearing Denied July 13, 1938.

Wm. E. Davenport and T. R. Johnston, both of San Angelo, for appellants.

Hartgraves, Swaim & Swaim, of Eden, for appellee.

McCLENDON, Chief Justice.

Appellee, Luster Lockett, sued appellant Mrs. Elizabeth Waring and others in trespass to try title to recover a tract of land in Concho County, conveyed by Mrs. Waring and others to Weaver February 20, 1932, and by Weaver to Lockett August 4, 1936. Lockett also sought by a separate count in his petition to remove cloud from his title by virtue of a certain mineral royalty reservation in the deed from the Warings to Weaver. The trial was to the court and the judgment was in favor of Lockett. The appeal is by Mrs. Waring and some of the other defendants.

There is no controversy over the title to the property other than the reservation in the Waring-Weaver deed of February, 1932, which reservation reads:

"The grantors herein do hereby reserve one-half of all royalties from all oil, gas or other minerals hereinafter produced from all of the above described land, provided however, that the oil well now drilling on an adjoining tract of land owned by Mrs. Elizabeth Waring, should become a producing well and should same not be a producing well, then this reservation to become null and void, and of no further force or effect, but should said well be a producing well, then, and in that event, this reservation shall remain in full force and effect."

We quote in full the allegations of Lockett's petition upon which he bases his

right to removal of cloud by virtue of this reservation:

"Plaintiff alleges and would show the court that said mineral reservation was not correctly drawn and, therefore, did not represent the contract and true intentions of either the grantors or grantee, and plaintiff further alleges that it was agreed and 'understood between the grantors and grantee in said deed that said mineral reservation would terminate when the test for oil and gas then being drilled on T. & N. O. R. R. Co. Survey No. 163, Certificate No. 30/234, Abstract No. 909, should be abandoned and that through mere error in drawing said mineral reservation, the same was not so drawn; that the test for oil and gas then drilling on said T. & N. O. R. R. Co. Survey No. 163 has been abandoned and the well plugged; that because of said mineral reservation being erroneously drawn, a cloud has been cast upon the title to the above described land."

The prayer of the petition in this regard reads:

"Wherefore plaintiff prays the court that defendants be cited to answer this petition, and that the aforesaid cloud be removed from the title and that the court construe said mineral reservation to conform to the actual intentions of the grantors and grantee at the time same was executed and that plaintiff have judgment removing the cloud thus cast upon said title * * *."

■ To this pleading appellants plead the four-year statute of limitations, Vernon's Ann.Civ.St. art. 5529, the deed having been executed in February, 1932, and the suit filed in August, 1936. This plea should have been sustained. The effect of the pleading was to have the wording of royalty reservation corrected to conform to the true intent of the parties, so as to make it read that the reservation should become void if the stated well "should be abandoned" instead of if such well should not "be a producing well"; and thereupon to remove cloud by reason of the reservation because the well "has been abandoned and the well plugged." That the four-year statute of limitations applies to the cause of action asserted in the plea to remove cloud from title is not an open question in this state. See Cleveland State Bank v. Gardner, Tex.Com. App., 286 S.W. 173; Carl v. Settegast, Tex.Com.App., 237 S.W. 238, 241. A full discussion of the subject is given in the latter case.

■ Appellee contends that a cloud upon title is a continuing injury as to which the statute of limitations does not apply; citing Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601, and White Point Oil & Gas Co. v. Dunn, Tex.Civ. App., 18 S.W.2d 267. This proposition is correct in the abstract; but it has no application where, as here, in order to remove the cloud it is necessary to reform the instrument alleged to create the cloud, on the ground of mutual mistake.

■ Appellee further contends that the judgment should be sustained because the evidence shows that the well was not in fact a "producing well," within the meaning of that term as applied to the oil and gas mining industry. But for the cross-action of appellant, we would overrule this contention upon the ground that this issue was not raised by Lockett's pleading, which is copied in full above.

Mrs. Waring and her co-appellant filed a cross-action, affirmatively asserting title in themselves by virtue of the royalty reservation in the Waring-Weaver deed, upon the following allegation:

"Defendant would further show the court that thereafter the said oil well referred to in such mineral reservation did become a producing well and thereafter did produce both oil and gas and title to one-half of all oil, gas and other minerals in said land and premises thereby became absolute in these defendants."

They prayed for judgment removing cloud from their title, and for title to and possession of one-half of the oil and gas mineral estate in the property.

This pleading clearly put in issue the question of whether the well referred to in the reservation became a producing well within the meaning of that term as used in the reservation.

■ Since the question presented is whether the evidence, considered in its most favorable aspect from that viewpoint, was sufficient to support the trial court's judgment, we will confine our statement to the testimony of McCabe, who was interested in and worked on the well in question.

Stated substantially his testimony was to this effect. In the summer of 1932 he got pretty much gas and a total of 150 barrels of oil from the well. He had a 250-barrel storage tank which he got ¼ or ⅓ full the first time he pumped. At that time he pumped out all the oil he could.

In about another week or ten days there was an accumulation of about 50 or 75 barrels and they worked about a month trying to get more oil and drilled the well deeper; but could not get any more oil. He took a load to the hotel at Menard and tried to sell it, but it was not satisfactory and he had to replace it with oil from a refinery in San Angelo. He never realized any money out of the oil that came from the well, and never paid Mrs. Waring or anyone else any royalties. The well was abandoned because there was not enough oil to make any money out of it. It was later plugged.

The evidence showed that there had been several other wells drilled in the vicinity previously that showed traces of oil, but were not producers; and that the grantors in the Waring-Weaver deed were willing to forego any royalty reservation if the well in issue should prove not to be a producer, but that if it turned out to be a producer they wanted to reserve a half interest in the royalties.

■ While there is a great deal of testimony in the record regarding the negotiations leading up to the deed's execution, we think it important only as showing the surrounding circumstances. There was no pleading on the part of appellants that the words employed in the reservation were used other than in their ordinarily accepted meaning in the oil and gas mining business. The language of the reservation presents no patent or latent ambiguity. We must therefore give to the words, "producing well," the meaning they usually import in the business to which they relate.

■ It may be conceded that this expression has been given different shades of meaning according to the context in which it is used. Ordinarily it implies production in paying or commercial quantities, the two expressions being used synonymously. Paying quantities is now held to mean yielding a profit over operating cost. See Texas Pacific Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S.W.2d 1031, 60 A.L.R. 936; Thuss on Texas Oil & Gas, 2d Ed., p. 105, § 76.

In a case involving the issue of determination of title under an oil and gas lease by limitation, where the lease was to remain in force as long as oil or gas was produced by the lessee from the land, it was held that: "The term 'produced' means production of either oil or gas in such quantities as to be susceptible of division." Adams v. Bennett, Tex.Civ. App., 282 S.W. 909, 911.

■ We are clear in the view that the evidence fully warranted a finding that the well was not a producing one. A fair test was made and the only recovery was of a comparatively small quantity, and that was of such quality that McCabe was unable to market it. The reservation was predicated upon a producing well, and by no fair or reasonable definition of that term could it be said to measure up to it. There was evidently only a very small pocket of non-commercial oil discovered, which was exhausted while the well was still in the exploratory stage. The court was fully warranted in holding that the condition upon which the reservation rested, that of a producing well, had not been met.

The trial court's judgment is affirmed.

Affirmed.

On Appellants' Motion for Rehearing.

■ One point in the motion was not adverted to in our original opinion. Appellants contend that the mineral title contained in the reservation in the Waring-Weaver deed did not pass to appellee by the Weaver-Lockett deed because of the following exception in the warranty clause of the latter deed which reads: "* * * save and except that this warranty does not apply to the mineral reservation contained in that certain deed executed by Elizabeth Waring et als., to B. W. Weaver, under date of February 20th, 1932, and recorded in Volume 40, page 296, Deed Records of Concho County, Texas, and said land is conveyed subject to said mineral reservation."

This exception or saving clause in the warranty did not constitute a reservation of any character of title in Weaver. It merely limited the scope of his warranty to Lockett. The granting clause of the deed, in form a general warranty, conveyed all title in the land which Weaver had. The exception in the warranty clause had no effect to strengthen or enlarge appellants' title under the reservation in the Waring-Weaver deed, or to reserve any title or interest in Weaver. Appellants' title depends alone upon the reservation in the Waring-Weaver deed.

■ Moreover, as pointed out in our original opinion, appellants were in the

attitude of plaintiffs in their cross-action, and therefore could not recover upon the strength of any reservation which Weaver might have made in his own interest in his deed to Lockett.

The motion is overruled.

Overruled.