## CARTER et al. v. GUARANTY STATE BANK OF WOODVILLE. (No. 1097.)

(Court of Civil Appeals of Texas. Beaumont. April 8, 1924.)

**1. Appeal and error ⬅️729—Assignment of error held bad as too general and as complaining of two rulings.**

Assignment that "the court erred in refusing to submit" two specified special issues *held* bad as not pointing out any specific error, and also as complaining of refusal of two separate special requested charges.

**2. Evidence ⬅️244(17)—Admission of cashier of original payee of note, after its assignment, not admissible against assignee.**

In action on note purchased by holder bank as part of assets of payee bank which failed, where defense was that note had been paid by renewal note, evidence of statement of cashier of payee bank, after its failure and sale of its assets, that he would get the note, mark it canceled, and send it to maker, *held* inadmissible to bind holder of note; the cashier at time of making the statement not acting as agent of either bank.

**3. Trial ⬅️317—Permitting jury after retirement to ask court question and allow explanation by plaintiff's attorney held without error.**

Where jury, after retirement, came into court and stated they did not understand how special issue should be answered, court's read-

ing of issue and permitting plaintiff's attorney, in absence of defendant's counsel, to explain how issues were to be answered, *held* without error, in view of failure of defendant to object when informed of proceeding almost immediately thereafter.

Appeal from Tyler County Court; G. C. Brodfield, Judge.

Suit by the Guaranty State Bank of Woodville against W. M. Carter and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Coleman & Lowe, of Woodville, for appellants.

J.·E. Wheat, of Woodville, for appellee.

O'QUINN, J. Suit by the Guaranty State Bank of Woodville, Tex., against W. T. Carter and N. H. Carter on a promissory note for the sum of $300, alleged to have been executed by them on February 1, 1920, payable to the Woodville State Bank, which note was alleged to be the property of said Guaranty State Bank.

The defendants answered by general demurrer, general denial, and the defendant W. M. Carter answered admitting the execution of the note sued on, but alleged that same had been paid off and discharged by the execution of a new note signed by himself and W. T. Moore, which new note was accepted by the Woodville State Bank in payment of the old note. The defendant N. H. Carter answered alleging that he was only surety on the note sued on, and that it had been paid by the renewal note, and that plaintiff was estopped from asserting liability against him.

Plaintiff, by supplemental petition, demurred to·the defendants' answer, denied generally the defensive matters therein contained, and specially denied that the new note was accepted in payment of the note sued' on, but that said new note was retained as collateral security to the old note and as evidence of an extension of same, and pleaded estoppel against defendant N. H. Carter to deny his liability on the old note, for the reason that the note contained a provision consenting to any extension or extensions of time of payment by renewal notes or otherwise without being discharged from liability on the note signed by him until the final payment of the indebtedness.

The case was tried to a jury upon special issues, and upon their answers judgment was rendered for appellee.

[1] Appellants' first assignment is:

"The court erred in failing and refusing to submit defendants' special issue No. 2 and special issue No. 3, which said special issues requested by the defendant submitted the issues of fact in support of the defendant N. H. Carter's pleas of estoppel."

This assignment is too general. It does not point out any specific error. Besides, it complains of two distinct rulings of the trial court, the refusal of two separate special requested charges. Cammack v. Rogers, 96 Tex. 457, 73 S. W. 795; Western Union Telegraph Co. v. Hill (Tex. Civ. App.) 26 S. W. 252.

[2] In the second assignment, it is urged that—

"The court erred in failing and refusing to permit the witness J. C. Dickerson, a witness for the defendant, to testify that he heard Geo. E. Neal, cashier of the Woodville State Bank, on about January 2, 1922, promise to send the note signed by N. H. Carter and W. M. Carter to the said W. M. Carter, marked canceled."

The record discloses that on February 1, 1920, W. M. Carter, as principal, and N. H. Carter, as surety, executed and delivered to the Woodville State Bank the following note:

"$300.00.       Woodville, Tex., Feb. 1, 1920.

"Sixty days after date, without grace, for value recevied, I, we, or either of us, promise to pay to the order of Woodville State Bank of Woodville, Texas, three hundred and no/100 dollars, at the Woodville State Bank, of Woodville, Texas, with 10 per cent. per annum from maturity until paid. And in the event· default is made in the payment of this note at maturity, and it is placed in the hands of an attorney for collection, or suit is brought on the· same, then an additional amount of 10 per cent. on the principal and interest of this note shall be added to the same as collection fees. The drawers and indorsers severally waive presentment for payment, protest and notice of protest, and nonpayment of this note, and consent to any extension or extensions of time of payment by renewal notes or otherwise, without being discharged from liability until the final payment of this indebtedness.

"W. M. Carter.
"N. H. Carter."

This note was not paid·at maturity, but was extended from time to time; W. M. Carter paying the interest for each extension. November 1, 1920, the bank sent W. M. Carter a notice that the note was due, and in the letter stated that the bank examiner objected to the note being longer carried, and requested Carter to execute a new note, and in the letter inclosed a note and requested him "to get the new note signed up." W. M. Carter signed the new note and got his brother-in-law, W. T. Moore, to sign same as surety, and sent it to the bank. The first surety, N. H. Carter, father of W. M. Carter, did not sign the new note. The new note was received and retained by the bank, but the old note was not canceled or returned to W. M. Carter. Later, the Woodville State Bank failed and was taken in charge by the bank commissioner, and the proceeds of the bank were finally sold, plaintiff herein buying them, and both the notes, the old one with the new one pinned to it, were delivered to plaintiff, and finally this suit was filed for the collection ,of the old

note. On the trial, W. M. Carter testified that he had paid the old note by executing and delivering to the bank the new note, and that after the bank had failed he was in Woodville and saw the cashier of the failed bank, George E. Neal, and had a talk with him about the notes, and that Neal promised him to get the old note, mark it canceled, and mail it to him at Rockland; that being where Carter lived. Neal testified for plaintiff and denied that he had accepted the new note in payment of the old note, but that he had attached it to the old note as collateral security. He also denied that he had told Carter that he would get the old note, mark it canceled, and return it to him. He admitted that he wrote the letter inclosing the new note to Carter for execution, but that he had said nothing in the letter about who to get on it as surety, but that he thought it would be executed by both the parties to the old note; that—

He "had no idea of accepting it in payment of the old note, as W. M. Carter and W. T. Moore were both insolvent. N. H. Carter was the only one worth anything. As the old note had a provision in it that all of the makers and indorsers would waive notice, and so on, and consent to extension by renewal notes or otherwise, without being discharged until final payment of the indebtedness, it did not occur to me that N. H. Carter would claim a discharge. I kept the note as evidence of extension and as additional security. I thought that I had the debt secured by three names instead of two. I loaned the money on N. H. Carter's signature. I would not have loaned it without it. The note has not been paid. They still owe it. When the bank closed, both notes were indorsed by me and turned over to the Guaranty State Bank, which bought all of the assets from the commissioner of insurance and banking."

Appellant offered the testimony of Dickerson as original evidence to prove that the note was paid off by the renewal note by showing that Neal, the cashier of the bank, had promised Carter to get the old note, mark it canceled, and mail it to him. Neal denied making any such statement to Carter, but if it be conceded that he did, the declaration of Neal was after the bank of which he was cashier had closed and was in the hands of the bank commissioner and the proceeds of the failed bank had been sold. We do not think there was any error in excluding the proposed evidence. It was offered for the purpose of binding the holder of the note, which stood in the shoes of the original payee. At the time Neal made the statement, if he did so, he was not acting as the agent of either bank, nor was the statement made at the time the new note was received by the bank. The rule seems to be well settled that the admissions of an agent not made at the time of the transaction to which they relate, and not especially authorized by the principal, are not competent against the latter, although the relation of principal and agent may still exist. Waggoner v. Snody, 98 Tex. 512, 85 S. W. 1134; Insurance Co. v. Frazer (Tex. Civ. App.) 112 S. W. 812; Southern Surety Co. v. Nalle & Co. (Tex. Civ. App.) 231 S. W 408.

[3] Appellants' third assignment of error asserts that—

"The court erred in permitting the jury, after it had retired to consider its verdict, to ask the court a question and for explanation of the court's charge, which request was not in writing, and the court erred in commenting upon such request and permitting counsel for the plaintiff to make remarks explanatory of the court's charge, as will appear from defendants' bill of exception No. 2 and the court's qualification of said bill of exception."

The court's qualification, attached to the bill of exception is:

"The foregoing bill is approved, with the following qualifications: While the jury was out in this case, they sent word to the court that they wanted to come in. I had them brought into the courtroom and had the sheriff to call the attorneys for the plaintiff and the defendant. While we were waiting for the attorneys, I asked the jury if it had reached a verdict. The foreman stated that they did not understand whether the second question was to be answered with the words 'yes' or 'no,' or whether it would have to be answered in some other way, and handed me the charge. In order to get in my mind the question which the jury desired to ask, I read the special issue. Mr. Wheat, the attorney for plaintiff having come in and heard the question asked, and while I was reading the question, he stated to me that in the charge the jury was told to answer the first question 'yes' or 'no,' but in the second, that I had not instructed them what words to use in writing their answer, and that was what was puzzling the jury. And when I had finished reading the question in the presence of the jury, they seemed to grasp the meaning, and the foreman of the jury nodded his head and said, 'I think we understand now.' I asked the other members of the jury collectively if they still wanted to submit any question to the court, and they shook their heads, and I asked the sheriff to carry them back to their room. Mr. Lowe, the attorney for the defendants, had not reached the courtroom, and as we went down the stairs, immediately after the jury retired, we met Mr. Lowe coming out of the vault, and I advised him of the proceedings, he not being present, urged no objection at the time, and did not request that any action be taken with reference to the matter until afterwards. The jury returned with their verdict in about 10 minutes."

Under the court's qualification, we do not believe that any error is shown, and the assignment is overruled. Gilham v. Railway (Tex. Civ. App) 241 S. W. 512.

No reversible errors appearing, the judgment is affirmed.