## Austin v. Ohio Fuel Oil Company.

(Decided February 15, 1927.)

### Appeal from Lawrence Circuit Court.

1. Mines and Minerals—Oil Lessee has Discretion in Matter of Drilling Additional Wells After Initial Development.—Lessee of oil lands, after initial development, has discretion in matter of drilling additional wells.

2. Mines and Minerals—Oil Lease as Respects Duty of Lessee to Drill Additional Wells Must be Reasonably Construed.—Oil lease as respects duty of lessee to drill additional wells, must receive a reasonable construction, having been made for mutual benefit of both parties.

3. Mines and Minerals—Forfeiture of Oil Lease for Failure of Lessee to Drill Additional Offset Wells Held Unwarranted.—In action for forfeiture of oil lease, or that lessee, in the alternative, be required to drill certain offset wells, refusal of court to declare for-

feiture or require additional drilling, held proper, in view of exist-
ing development, production, cost of additional drilling, and pre-
vailing prices.

4.  Mines and Minerals—Under Prayer for General Relief, Court May
Refuse Forfeiture of Lease, Determine Necessity for Additional
Wells, and Allow Lessee Opportunity to Comply.—In action for for-
feiture of oil lease, where there is an honest difference of opinion
between parties as to necessity for putting down of additional
wells, under prayer for general relief, courts may refuse forfeiture,
define rights of parties, determine wells necessary, and give lessee
opportunity to comply.

JOHN W. WOODS for appellant.

A. O. CARTER and O. J. WILKINSON for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

On October 13, 1915, W. F. Austin executed to the
Ohio Fuel Oil Company an oil lease, in the ordinary form,
covering his tract of land embracing, he says, 110 acres,
and the company says 96 acres. By the terms of the
lease he was to have one-eighth of the oil produced, and
the company was to pay him a certain rent until a well
was put down. The lease was for ten years and as long
as oil or gas was produced. The company paid the rent
as stipulated and a well was put down. It then went on
and put down three other wells in the northern part of
the farm, and about the usual distance from the bound-
ary. The last of these wells was completed in 1920. At
that time it had put down a well on the Caines place,
south of his farm and about the usual distance from the
boundary. It had also put down one well on the Blan-
kenship farm, west of his tract and about the same dis-
tance from the boundary line. It then established a power
plant on the Austin farm by which the oil from all these
wells was pumped. They were all drilled to the Berea
sand. At first they did better in production, but at the
time this controversy arose the wells on the Caines farm
and the Blankenship farm were producing .7 or .9 of a
barrel of oil a day, and the four wells on Austin's farm
each about 1.7 barrels per day. On July 15, 1922, Austin
wrote the company a letter notifying it to drill on his
land offset wells to the Blankenship and Caines wells,
also to drill additional wells within a reasonable time
until the whole lease was developed, and upon its failure

to do so within a reasonable time he would file suit to cancel the lease and for damages. The company answered this letter saying that its manager would see him and come to some understanding in regard to the matter. But no understanding was reached, and on May 17, 1924, Austin filed this suit against the company praying forfeiture of the lease, or that the defendant be required to further develop the property and put down the offset wells. referred to. The issues were made up, proof was taken and on final hearing the circuit court dismissed the petition. Austin appeals.

The proof shows that the total expenditures of the company on the lease up to January 1, 1925, amounted to $37,921.95, and the total realized from the oil produced up to January 1, 1925, was $41,034.10, but these figures do not take into consideration charges for depreciation, taxes or overhead expenses. When the wells were put in oil was selling at $4.00 a barrel, or near that, and the price had dropped to two or two and a half dollars per barrel. The production of the wells had gone down in about the same ratio as the price of the oil. The cause of the drop of the price was the overproduction of oil in the country. The company often had to pay storage on its oil before it could be sold and then was compelled to sell at a reduced price. It cost, in round numbers, $6,000.00 to put down a well.

The production of the two wells south and west of Austin's farm was so small and they were so far from the line that plainly as a well costs $6,000.00 it would not be good judgment to put down on his land offset wells to these wells. The lessee has a discretion. Union Gas Co. v. Diles, 200 Ky. 188. The fact is Austin was greatly benefited by the wells on his land being put down on the other side of the farm, for they are much better producers than the wells in the territory on the other side. The main complaint is that it was the duty of the oil company to proceed with reasonable diligence to develop the whole lease and that to this end it should have put down other wells on the south side and in the center of his farm so as to fully develop the property, but for over four years it had put down no additional wells.

On the other hand, the company maintains that it would be throwing away money at the present price of oil and the present production of the wells in this sand to put down other wells as demanded by Austin. It will

be seen that in the four years in question the company has received in net income less than one-half of what the interest on its moneys invested would have brought at six per cent, and to require it to put down eight more wells as asked by Austin at $6,000.00 each would be to simply forfeit its lease and the investment it has made under it.   While the lease comtemplated a development of the property for oil and gas, and was made for this purpose, it should not receive such a construction as would prevent any development.   The lease was made for the mutual benefit of both parties and must receive a reasonable construction.   In a note to Paraffine Oil Co. v. Cruce, 14 A. L. R. 969, after stating that under a lease which is silent as to time for the drilling of additional wells, a duty devolves on the lessee to sink additional wells with reasonable diligence, where it appears that oil or gas can be produced in paying quantities.   This is added:

"Whether or not, in any particular instance, such diligence is exercised, depends upon a variety of circumstances, such as the quantity of oil and gas capable of being produced from the premises, as indicated by prior exploration and development, the local market or demand therefor, or the means of transporting them to market, the extent and results of the operations, if any, on adjacent lands, the character of the natural reservoir, whether such as to permit the drainage of a large area by each well, and the usages of the business.   Whatever, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of both lessor and lessee, is what is required. A plain and substantial disregard of this requirement constitutes a breach of the covenant for the exercise of reasonable diligence." To the same effect see 40 C. J., p. 1065, section 682, and cases cited.

In Rains v. Kentucky Oil Co., 200 Ky. 483, the court thus stated its conclusion:

"As the lessee had gone to great expense in the development of the property and has drilled three wells from which a substantial amount of gas is obtained, and there is no showing that the supply of gas on the leased premises has been diminished in

the least by the drilling of other gas wells on contiguous territory, it can not be doubted that there has been a substantial compliance with the terms of the lease, and that no cause for forfeiting the undeveloped premises was shown.''

The circuit court, under the facts shown, properly refused to adjudge a forfeiture of the lease and properly dismissed the petition, for the lessee had invested a large amount of money in the property and was proceeding with the development as fast as, in good judgment, the interest of the parties required. Austin was receiving about $50.00 a month for his share of the royalties.

In cases like this where there is an honest difference of judgment between the parties as to the putting down of additional wells and the court, on all the facts, shall conclude that additional wells should be put down, although the lessee in good faith thought otherwise, the court may, under the prayer for general relief, while refusing to forfeit the lease, define the rights of the parties under it and determine what wells should be put down and the time in which they should be drilled, and give the lessee an opportunity to comply with its order. On the facts shown here the judgment of the court was correct.

Judgment affirmed.