## George and Touma v. Franklin, et al.

(Decided March 1, 1927.)

### Appeal from Johnson Circuit Court.

1. Mines and Minerals.—Stipulations in oil lease and supplemental agreements that drilling shall be prosecuted with due diligence, until land is properly, thoroughly, and fully developed, held mere stipulations by lessees to observe and be bound by rules of law defining rights and obligations of parties to such leases.

2. Mines and Minerals.—Lessors, alleging, in petition to cancel oil lease for lessees' failure to fully develop land as required thereby, that quantity of oil which might be produced from additional wells is so small that lessors could not procure other operators to develop remainder held not entitled to such relief.

3.  Mines and Minerals.—Supplemental agreement between parties
    to oil lease that lessees should return to lease and resume opera-
    tions until it was fully developed held fully complied with by
    lessees' return and drilling of two additional wells, which demon-
    strated that further drilling would be unprofitable.

WHEELER & WHEELER for appellants.

FRED HOWES for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing in part and affirming in part.

Appellees, Mary Franklin and Lizzie Franklin
Brown, own 50 acres of land in Johnson county which
they have leased to appellants, N. George and K. M.
Touma, to be developed for oil and gas. As appears
from the lease and a supplemental agreement, appel-
lants paid appellees a bonus of $500.00; agreed that they
should have one-eighth of the oil produced and saved as
royalty, and to pay $250.00 per year for each well pro-
ducing gas as long as it should be sold therefrom; and,
futher, in the event gasoline should be manufactured
from casing-head gas to pay them $25.00 for each gas
well so used. The lease contained this drilling clause:

> "Lessees agree to commence a well on said
> premises within two months from the date hereof,
> or thereafter pay the lessor $50.00 each month in
> advance from the 4th March, 1923, until said
> well is commenced or the lease surrendered. The
> drilling of a nonproductive well shall be accepted by
> the lessor in lieu of delay rental for a period of one
> year from the date of its completion, at the expira-
> tion of which time the lessee shall commence another
> well or resume the payment of delay rental."

The lease contained this further stipulation with
reference to its development:

> "It is further understood that drilling shall be
> prosecuted with due diligence until said land is
> properly developed; for failure to prosecute said
> work diligently until said land is properly developed,
> this lease is to be null and void."

Appellants appear to have moved on to the leased
premises shortly after the execution of the lease and to
have drilled three wells, all of which proved productive

of oil in small but paying quantities; after which, and on the 28th day of May, 1923, the parties, lessors and lessee, entered into the following written agreement with reference to the further development of the oil lease in question:

> "Whereas, George and Touma, oil operators of Niagra Falls, New York, are the owners of an oil and gas lease executed to them by Mary Franklin, Mary Franklin, guardian, and Lizzie Franklin, of Red Bush, Kentucky, and whereas, under the terms of said lease the said George and Touma are bound to thoroughly develop said lease;
>
> "It is hereby agreed by all the parties thereto that the said George and Touma may remove their drilling machinery off of said lease for the purpose of drilling five other wells on other leases, and after completion of the five such wells the said George and Touma are to resume operation on this said lease and continue same until said lease is fully developed or to pay the lessors the sum of fifty dollars per month so long as the operations are delayed."

After drilling the five wells contemplated by the last quoted agreement, appellants moved again to the premises leased to them by appellees and drilled two additional wells, both of which appear to be producers of oil in small but paying quantities. As these five wells were brought in by appellants they were put on the pump, connected with a pipe-line and have been pumped continuously since, the oil from time to time being delivered to the Cumberland Pipeline Company. Appellees' one-eighth royalty has been set apart to them and they have sold and collected for their royalty portion of the oil. After completing the fifth well appellants ceased drilling operations and since then have done nothing toward the further development of the lease except to keep the wells they have drilled in condition and to produce and market the oil they afford. Appellees demanded that they drill other wells, which appellant declined to do.

This action in equity was thereupon instituted by appellees to cancel the lease in question for failure upon the part of appellants to fully develop it as provided for by the lease, or in the event that could not be done, to require appellants to drill other wells and fully develop the lease, and if that could not be done to collect rentals

at the rate of $50.00 per month from the time when appellants should have begun another well. Appellants defended upon the theory that the lease had been fully developed in accordance with its terms, and denied appellees' right to any of the relief sought by them. Upon the trial below the chancellor adjudged that appellees had not manifested their right to have the lease cancelled or to require appellants to do additional drilling, but that they were entitled to recover rentals at the rate of $50.00 per month from the 2nd day of July, 1924, to the 7th day of November, 1925, the dates covered by the petition and amended petition, amounting in all to $800.00. Appellants prosecute the appeal from that judgment, and appellees have moved for and been granted a cross-appeal from the judgment dismissing their petition in so far as it sought a cancellation of the lease in question.

There is some controversy as to the number of acres in the lease in question, but it appears to contain approximately 50 acres, and the tract of land also appears to be approximately square. Wells Nos. 1 and 2 appear to have been drilled in about 200 feet of the southern line of the lease and about 500 feet apart. Well No. 2 also is in about 250 feet of the west line of the lease. Wells Nos. 3 and 5, spaced approximately 500 feet from each other, are along the west boundary of the lease, No. 3 being about 200 feet from the line, and No. 5 being about 100 feet from the line. Well No. 5 also is in about 100 feet of the north line of the lease; and well No. 4, spaced approximately 1,200 feet from No. 5, is in about 75 feet of the north line of the lease. The drilling of these five wells appears to have cost appellants approximately $25,000.00. When the proof was taken the returns from the oil produced and sold from them had not equaled the cost of drilling and equipping these wells for production by several thousand dollars. The wells appear to be producing on an average approximately a barrel a day each. The situation with reference to further development of this lease by appellants is perhaps as clearly shown by the following quotation from appellees' petition as could be stated:

"Plaintiffs further state that defendants, as hereinbefore stated, have drilled five wells on their said tract of land and that it would be unjust and inequitable to allow them to retain said lease as to the wells already drilled, and surrender same as to the undeveloped portion of said lease because it is now

impossible for these plaintiffs to induce other drillers or operators to develop the remainder of said lease because the production of the wells already drilled, while profitable, are nevertheless small and insufficient to justify a separate contract with other drillers or operators on account of the additional expense to which they would be subjected in the development of the remainder of said lease.''

The record fully bears out the statement so made by appellees in their petition herein.

The stipulation contained in the lease in question that drilling shall be prosecuted with due diligence until the land is properly developed and that failure to do so shall avoid the lease; and the stipulation of the supplemental agreement that under the lease the lessees are bound to thoroughly develop it; and the further agreement upon the part of the lessees, after drilling the five wells on other leases, to return to the lease in question and resume operations and continue same until the lease is fully developed, which we have quoted above, are mere stipulations upon the part of the lessees to observe and be bound by the rules of law adhered to in this jurisdiction defining the rights and obligations of the respective parties in cases where oil leases are entered into between them as here. If the contract in question had not contained these provisions the law regulating the question would have imposed the same duty upon appellees as was stipulated by the contract and supplemental agreement in question. Much the same situation as is here presented was before the court in the recent case of Austin v. Ohio Fuel Oil Company, 218 Ky. 310, 291 S. W. 386. There five wells had been drilled on a lease containing 110 acres. No wells had been drilled for approximately four years. Lessors had demanded that additional wells be drilled, and upon lessees' failure to do so instituted that action for a cancellation of the lease. The trial court denied lessors the relief sought and the judgment was affirmed upon the appeal. The reasons actuating the court and the principles of law relating to the question were fully discussed and determined in that opinion and need not here be repeated. Appellees' petition alleges that the quantity of oil that might be produced from additional wells is so small that they could not procure other operators to develop the remainder of the lease, and yet they come into a court of equity and ask, because

appellants will not do what they could not procure other oil operators to do, to have the lease cancelled and the wells which appellants have drilled turned over to them.

Under the facts appearing and for the reasons indicated in Austin v. Ohio Fuel Oil Company, *supra,* the chancellor correctly concluded that appellees did not manifest the right to have the lease in question cancelled.

The supplemental agreement entered into on May 28, 1923, providing that after drilling the five wells therein mentioned on other leases appellants should return to the lease in question and resume operations and continue same until the lease is fully developed or pay the lessors the sum of $50.00 per month so long as operations are delayed, was fully complied with by appellants when they returned to the lease in question and drilled the two additional wells, under the facts appearing herein. Those wells were drilled on the opposite side of the lease from the wells which had been previously drilled and have given it a thorough test. So much so that appellees alleged in their petition that they could not procure other operators to develop the remainder of the lease because of the proved small quantity of oil that might be produced if additional wells should be drilled. The wells drilled had demonstrated that further drilling would be unprofitable. It was never contemplated by the parties that when a sufficient number of wells had been drilled to demonstrate that further drilling could only result in loss to the lessees that they should be required to pay rentals in lieu of such drilling. The record establishes that this lease has been fully developed within the principles announced in Austin v. Ohio Fuel Oil Company, *supra,* and when that point has been reached lessees may not further be required to pay rentals in lieu of additional drilling. For these reasons the court has concluded that the chancellor erred in adjudging anything to appellees by way of rentals on account of appellants' delay in drilling further wells.

For the reasons indicated the judgment herein will be reversed on the appeal and affirmed on the cross-appeal, with direction that a judgment dismissing appellees' petition be entered.