## BRYAN et al. v. SINCLAIR OIL & GAS CO
(No. 9036.)

Court of Civil Appeals of Texas. Galveston.
Dec. 22, 1927.

Rehearing Denied Jan. 19, 1928.

1. **Mines and minerals** ☞78(1)—**Requirement that lessees proceed to faithfully and diligently protect boundaries of oil properties by development merely required such development as ordinarily prudent oil operator would reasonably have made.**

Contract leasing oil property, which required lessees to "proceed at once to faithfully and diligently protect by development" boundaries so as to prevent draining of oil by wells of adjoining lands, merely imposed such development as an ordinarily prudent oil operator would reasonably have made under the same circumstances, and did not require lessees to proceed to immediately drill wells near boundaries regardless of questions of expediency and mutual advantage.

2. **Appeal and error** ☞729, 730(2)—**Assignment based on giving instructions and special issues without identifying them or stating grounds of objection held to present nothing for review.**

Assignment of error charging that court erred in "instructions and special issues submitted to jury in the particulars as fully set forth in plaintiff's exceptions" *held* to present nothing for review on account of appellant's failure to name or identify instructions or special issues or show why it was error to give them.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Appeal and error ⊚⟳1062(1)—Unanswered special issues are treated on appeal as never having been given.**

Where jury found no occasion to answer special issues, matter stands as if issues had never been given at all, where issues are attacked on appeal.

**4. Appeal and error ⊚⟳1062(1)—Assignments attaching unanswered special issues as evidentiary held to present nothing for review (Rev. St. 1925, art. 1844).**

Assignments of error based on giving of special issues·on ground that issues submitted evidentiary facts *held* not entitled to consideration on appeal, where jury failed to answer issues, assignments being also defective under Rev. St. 1925, art. 1844, for failing to specify grounds on which appellants relied.

**5. Appeal and error ⊚⟳273(5)—Including In general charge instructions relative to special issues held not fundamental error, where not specifically urged.**

Giving in general charge of instructions relative to special issues did not warrant reversal as fundamental error, especially where objection was not specifically urged.

**6. Mines and minerals ⊚⟳78(7)—Instruction that lessee of oil property sufficiently discharged duty if it drilled such wells as reasonably prudent operator would drill held not improper under special issue as to whether lessee fully developed property.**

In suit by lessors against lessees of oil property for failure to protect boundaries against drainage by wells on adjoining lands and for failure to develop lands for oil, instruction given relative to special issue involving development that defendant sufficiently discharged duty if it drilled such wells as reasonably prudent operator would have drilled *held* not improper or inapplicable.

Appeal from District Court, Brazoria County; Hon. M. S. Munson, Judge.

Suit by D. F. Bryan and others against the Sinclair Oil & Gas Company. Judgment for defendant,.and plaintiffs appeal. Affirmed.

Stevens & Stevens, Allen B. Hannay, and Hirsch, Brown & Susman, all of Houston, S. E. Damon, of Austin, and Rucks & Enlow, of Angleton, for .appellants.

Louis J. Wilson, of Angleton, and Baker, Botts, Parker & Garwood, Walter H. Walne, Jas. L. Shepherd, Jr., and S. H. German, all of Houston, for appellee.

GRAVES, J. As lessors or owners of the royalty interest under oil lease 513, appellants sued appellee as the lessee thereunder for damages for its alleged failure to develop a 67-acre tract of land in the Damon Mound oil field, as so contracted for, in two respects:

(1) In not protecting the boundaries of the tract against drainage by wells on adjoining lands, as required by paragraph VII of the lease contract.

(2) In not fully developing the land as a whole, after the finding of oil thereon in paying quantities, pursuant to paragraph IX of the lease.

The provisions of the contract thus invoked were these:

Paragraph VII: "It is further agreed that the party of the second part shall at all times protect the boundaries of the herein leased premises so that the oil and sulphur under said land may not be drained out by wells on adjoining lands, and any time oil or sulphur in paying quantities is developed on adjoining lands within three hundred (300) feet of the boundary of said herein leased land the party of the second part shall proceed at once to faithfully and diligently protect by development the portion of said herein leased land adjacent to said well or wells on adjoining land."

Paragraph IX: "When oil or sulphur in paying quantities on the herein leased land is developed, said party of the second part shall with all due and proper diligence fully develop said herein leased land for the product or products as found, and shall proceed with all due diligence to drill and complete other wells on said herein leased land until said land is fully developed."

At the close of the evidence, the trial court peremptorily withdrew the cause of action for drainage from consideration by the jury, on the holding that appellants "had failed to prove it," but submitted to them the other ground of recovery declared upon in this inquiry:

"Special Issue No. 1: Have the operations of defendant, Sinclair Oil & Gas Company, conducted on the lease 513 since September 1, 1920, been sufficient to develop the leased premises as an ordinarily prudent oil operator, familiar with the facts as they existed from time to time, and having due regard for the rights of the lessors as well as the lessee, would have developed and operated same?"

Following the return of an affirmative answer to this question, judgment was rendered in favor of the appellee, and the appeal proceeds as a protest against it.

Under an assignment and appended proposition challenging the correctness of the peremptory instruction, appellants contend that the evidence did clearly raise an issue over whether or not they showed recoverable damage as from the appellee's failure to protect their tract against drainage by wells on adjoining lands, in that it was shown not to have "faithfully and diligently protected by development"—that is, by the drilling of proper offsets thereon—the portions of the leased tract adjacent to and within 300 feet of these five wells on adjoining lands, in which oil in paying quantities had been developed, to wit, Humble-Bryan No. 1, Ramdohr No. 1, Woodward No. 3, Bryan No. 14, and Bryan No. 18.

[1] After examining the evidence in the light of what the law requires it must encompass, we are unable to agree that it does

⊚⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

raise any such issue, concluding rather that the learned trial judge was right in holding it did not.

Under paragraph VII appealed to on this branch of the case, the obligation to "proceed at once to faithfully and diligently protect by development" the boundaries of this tract adjacent to wells on adjoining lands, in which oil in paying quantities had been developed, did not, we think, there being no specific agreement nor requirement to drill vel non, impose upon the appellee a more burdensome development than an ordinarily prudent oil operator, having due regard for his own as well as his lessors' rights, would reasonably have made under the same circumstances. George v. Franklin, 219 Ky. 377, 292 S. W. 1093; Kellar v. Craig (C. C. A.) 126 F. 630; Watchorn v. Roxana Petroleum Corporation (C. C. A.) 5 F.(2d) 636. That is, it did not become its duty to immediately drill a well on this land adjacent to every well developed on adjoining lands, regardless of all the attending circumstances at the time and whether or not that would have promoted the mutual advantage of both parties to the contract. Brewster v. Zinc Co. (C. C. A.) 140 F. 801; Eastern Oil Co. v. Beatty, 71 Okl. 275, 177 P. 105; Ohio Fuel Supply Co. v. Shilling, 101 Ohio St. 106, 127 N. E. 873; Steel v. American Oil Development Co., 80 W. Va. 206, 92 S. E. 410, L. R. A. 1917E, 975; Grass v. Big Creek Development Co., 75 W. Va. 719, 84 S. E. 750, L. R. A. 1915E, 1057; Ammons v. Oil Co., 47 W. Va. 610, 35 S. E. 1004.

It is true that the five enumerated wells, which appellants claim their tract was not protected against drainage from, were on adjoining lands within the stipulated 300 feet of their boundaries, and that each of them was shown to have produced a large quantity of oil first and last during its operation; but that is about as far toward establishment of the case for damage from drainage as any concrete and tangible evidence goes.

Without undertaking to detail the evidence making that result manifest, there was under the whole proof for that claim a failure to establish, even by legitimate inference, any one of these essential elements:

(1) That oil in paying quantities was either developed in any one of the five adjoining wells depended upon, or that any of them actually drained any oil from under this 67 acres, or, if so, appreciably how much, during the imminency of appellee's quoted obligation with reference thereto—that is, on and after September 1, 1920.

(2) That the wells appellee did drill on the 67 acres during the time just specified—that is: (a) Wells No. 10 to the north and No. 4 to the south of Bryan No. 14; (b) wells No. 6 to the west and No. 4 to the north of Ramdohr No. 1; (c) well No. 11 opposite Woodward No. 3; (d) wells Nos. 11, 5, and 9, opposite to and nearer the boundaries of lease 513 than Humble-Bryan No. 1; and (e) Nos. 20 (1), 20 (2), 23 and 25, near to and closer to the boundary line than Bryan No. 18—did not properly offset, within the meaning of the contract, all these five enumerated wells on adjoining lands.

(3) Either that an ordinarily prudent oil operator, familiar with the existing facts throughout the material time involved, and having due regard for the several rights as well as interests of both lessors and lessee, would have drilled additional wells on this tract to those specified in preceding paragraphs (2), or that, if any such additional wells had been drilled, what amount of oil, if any, would have been so produced, and whether or not its production would have been with profit or loss to the lessee.

That part at least of the Damon Mound oil field was undisputedly shown to be what (in the applicable parlance) is known as "spotted" territory, which meant that oil in different wells there comparatively close together was neither found uniformly at all, nor at the same depths or in the same sands; so that, it got nowhere toward the discharge of the burden resting upon appellants in all these circumstances here to merely show that the five wells on adjoining lands, located as they were shown to be, were drilled to given depths and produced in gross a certain maximum number of barrels of oil over an extended period, much of it antecedent to the inception of appellee's tenure of lease 513, without data even tending to indicate whether or not a reasonable profit on his investment resulted therefrom to the operator. Not only so, but the testimony of appellants' own witnesses further presented that this "spotted" character of the field at and adjacent to the locations of these five wells was so pronounced as to indicate that the oil-bearing strata there had been so shattered, tilted, or disarranged by a subterranean upheaval as to have left them at different levels and depths, as well as divergent states of thickness and porosity, thereby making it impossible to determine with any measurable degree of reasonable probability how far and from what direction they would drain the oil from under adjacent land. Obviously, we think, in such a state of the record, the issue of recoverable damage as from drainage was not raised.

The adverse determination of their second complaint—that the 67 acres was not fully developed, pursuant to the copied paragraph IX of the contract—is sought to be assailed here by appellants under four propositions, the first three being submitted as applicable under their second assignment of error, the fourth under their second, third, and fourth assignments, and all as involving fundamental error.

The appellee objects to this court's consideration of any of these propositions, upon

the ground that the assignments to which they relate, "to wit, the second, third, and fourth, are wholly insufficient to present any ground of error, or to set forth any reason or particular in which the trial court has erred; each of said assignments being entirely too general, vague, and uncertain, and the second assignment being multifarious, in that it complains of numerous rulings of the court relating to separate and distinct matters."

The objections are well taken, and must be sustained. The assignments so relied upon are as follows:

"Second. Plaintiffs show to the court that the court erred in giving the several instructions and special issues submitted to the jury in the particulars as fully set forth in plaintiffs' exceptions filed to the charge of said court before said charge was submitted to the jury." (Third ground for motion for new trial, Tr. page 77.)

"Third. The court erred in giving issue No. 2, because said issue asked the jury to find evidentiary facts." (Fourth ground of motion for new trial, Tr. page 77.)

"Fourth. The court erred in giving special issue No. 3, because said issue asked the jury to find purely evidentiary facts." (Fifth ground of motion for new trial, Tr. page 77.)

[2] That the second assignment can furnish no support for any of these propositions is thus well demonstrated by the appellee in its brief:

"It will be seen that this assignment complains of the action of the court in giving: (a) 'The several instructions' without naming them or identifying them, or stating any ground why the giving of such instructions was error; (b) 'the special issues,' without naming or identifying them, or stating grounds why it was error to give them. It will also be noted that the objections to these instructions and special issues are not set out in any place in appellants' brief. That this assignment is too general, and is multifarious and cannot be considered, is so apparent that authorities are not necessary. However, we refer to the following:

"In Lundell v. Allen (Tex. Civ. App.) 244 S. W. 1098, the assignment was as follows: 'The court erred in overruling and in not sustaining defendant's objections and exceptions to the general charge of the court as made prior to the reading of said charge to the jury, and filed as a part of the record in this case.'

"The court disposes of same in this language: There were seven separate objections presented to the court's charge. The assignment and proposition are too general to be considered. See, also, Killman v. Young (Tex. Civ. App.) 171 S. W. 1065; Carter v. Guaranty State Bank (Tex. Civ. App.) 262 S. W. 108; Hill v. Gomez (Tex. Civ. App.) 260 S. W. 618; also, note 46 under article 1844, Vernon's Civil Statutes [1925], vol. 4, p. 103."

[3-5] Likewise, the appellee as successfully supports its further objections, as referable to the third and fourth assignments, with these comments and citations of supporting authority:

"It will be noted that these assignments complain of error in giving issues Nos. 2 and 3. However, by referring to the answers of the jury and the judgment of the court, it will be seen that the jury only answered special issue No. 1, and did not answer special issues Nos. 2 and 3, and, having answered issue No. 1 in the affirmative, they were not required under the court's charge to answer any other issues. It will therefore be seen that the third and fourth assignments of error are meaningless. There is no complaint that special issue No. 1 'asked the jury to find evidentiary facts,' and so the fifth proposition has no application to any assignment of error.

"Appellants are complaining because the court submitted special issues Nos. 2, 3, and 4. As the jury found no occasion to answer these issues, the matter stands as if they had never been given at all. Besides, it clearly appears that the third and fourth assignments were entirely too general, because they failed to 'distinctly specify the grounds upon which they relied,' as provided in article 1844 of the Revised Statutes 1925. See Tiemann v. Loesch (Tex. Civ. App.) 285 S. W. 338, and notes 34 and 35, art. 1844, Vernon's Statutes 1925, vol. 4, pp. 79 to 84.

"Appellants may attempt to argue that the giving of instructions to the jury in the general charge, in connection with the special issues, was fundamental error apparent on the face of the record. A sufficient reply to this is that they do not urge it as such, but attempt to urge this objection under the assignments of error set out. However, there are numerous decisions to the effect that this would not constitute fundamental error. * * * Walker v. Metropolitan Railway Co. (Tex. Civ. App.) 151 S. W. 1142; Chapman v. Reid (Tex. Civ. App.) 260 S. W. 955; Armingen v. Martin (Tex. Civ. App.) 252 S. W. 1109."

[6] Under the evidence as a whole, the outstanding features of which have been adverted to in the above stated findings of fact by this court, we are unable to say that this instruction given by the court in connection with the special issue was improper or inapplicable to the facts developed:

"You are charged that under the lease contract sued on herein no duty rests upon the defendant to drill additional wells merely for the purpose of expeditiously getting out the oil from the leased premises, but, on the contrary, the duty of the defendant has been discharged if it has by the use of reasonable diligence drilled such wells as a reasonably prudent oil operator would have drilled in order to produce all of the oil that may be produced with profit to the lessee."

There is no contention made that the jury's answer to special issue No. 1 is not supported by the evidence, and it could not be sustained if there were. It settled the second branch of the controversy adversely to appellants.

These conclusions require an affirmance of the trial court's judgment; that order has been entered.

Affirmed.