## Enfield v. Woods.

(Decided March 16, 1923.)

### Appeal from Allen Circuit Court.

1. **Mines and Minerals—Oil "Produced," to Continue Lease, Must be in Quantity Susceptible of Division.**—In an oil lease, which was to continue so long as oil was produced on the premises, without requiring it to be produced in paying quantities, the term "oil produced" is not satisfied by the production of a mere showing of oil, but means a production of oil in such quantities as to be susceptible of division, so as to pay the landowner a royalty, even though small.

2. **Appeal and Error—Finding of Chancellor not Disturbed, Unless Against Weight of Evidence.**—A finding of the chancellor that oil was not produced on the premises within the term of the lease will not be disturbed on appeal, unless against the weight of the evidence.

H. L. JAMES for appellant.

HARPER & DENTON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Affirming.

In February, 1916, H. K. Lewis executed an oil and gas lease on a tract of land in Allen county to Gilliam and Meredith for a term of five years from its date and "as long thereafter as oil and gas, or either, is produced therefrom by the lessees, or either of them, their successors and assigns." The title to the land passed from Lewis to appellee Woods, and the oil lease was assigned and transferred several times until it reached appellant Enfield shortly before February 17, 1921. Appellant Enfield had previous to the assignment of the lease to him drilled a well on the leased premises for his predecessor in title but finding no oil he plugged it and moved his machinery away. In the settlement of accounts between appellant and his assignor the lease passed by assignment to appellant and he immediately moved his machinery back on to the premises and began to drill a well. This was in January or February, 1921. The lease by its terms was to expire on February 17th, of that year. Finding that he would be unable to complete a well before the 17th of February he moved his machinery from the hole he was drilling to the old well drilled on the lease for his predecessor and there drilled out the

plug and sank the well a few feet into another sand, and on February 17th shot the well. About this time appellant had a conversation with appellee Woods, in which he asked Woods for additional time in which to further develop the property, but received no satisfactory answer. Woods, however, extended the time so as to give appellant opportunity to see whether the well which had been shot was a producer. After the well was shot machinery was installed and it was pumped. Appellant Enfield testified that it produced some oil but he admits the quantity was very small. He introduced some witnesses who testified in substance the same. On the other hand appellee Woods testified that he was on the premises at the time the well was originally drilled in and that it was a dry hole; that it was plugged slightly above the sand and again at the depth of seventy-two (72) feet; that appellant then gave the well to appellee Woods for water purposes and moved the machinery away, abandoning the lease; that a very short time before February 17, 1921, appellant moved his machinery back on the lease and began to drill, but finally placed his machinery over the old well and drilled the plugs out and sank it a little deeper and shot it and thereafter pumped it but found no oil of consequence, if any at all; that the product of the well was clear and looked like water; that there was nothing more than a mere scum or showing of oil on the barrels or tank into which the well was pumped; that there was not enough oil to stain the ground. Appellee Woods is sustained in his evidence by a number of witnesses who saw the well pumped, and especially by one of the drillers who worked on the well and who saw it pumped. This witness stated that the well was dry and that it did not have anything more than a bare showing of oil, even if that much.

The question therefore is: was the lessee Enfield entitled, under the terms of the contract, to longer hold the lease? He relies upon that part of the contract providing that the lease shall continue for five years from date and "as long thereafter as oil and gas, or either, is produced therefrom by the lessees, their successors and assigns." It will be observed that the lessee is not required in specific terms to produce oil in paying quantities but he is required to produce oil or gas, one or the other, from the premises. This, of course, means a production of oil or gas in such quantities as to be susceptible of division, so as to pay the landowner a

royalty, even though small. A mere showing of oil manifestly is not sufficient even though produced. The production must be tangible and substantial, but it need not be great. In discussing this subject Thornton on Oil & Gas, section 149, in substance says, where the lessee claimed to have found oil in paying quantities, but admitted he had never pumped any from the well, it was held that this was not a prosecution of the business to success because it was not a production of oil in quantities capable of division between the parties, according to the term of the lease. Kennedy v. Crawford, 138 Penn. State 561. The same author in section 150 says: "If a lease is to continue so long as oil or gas is produced, then it is immaterial whether the lease is a paying one or not; for so long as the wells drilled produce either oil or gas, the lease continues. The lessor cannot complain of his own folly in granting such a lease. This is especially so if the lessee made and is making a faithful effort to make the wells sunk productive." The general rule, however, is to hold the expression "oil well" or "gas well" as used in a lease contract to mean an oil well or gas well which can be profitably operated as such. Pritchard v. Freeland Oil Co., 75 W. Va. 450; L. R. A. 1915D 1186.

The chancellor on the facts above recited found that the well was a non-producer. The evidence sufficiently supports this finding, and we are not inclined to disturb it. Indeed we are not warranted in doing so unless it be against the weight of the evidence. Here it appears to be with the weight of the evidence.

The question of fact being determined in favor of appellee Woods, the equity follows, and the chancellor did not err in decreeing a cancellation of the lease.

Judgment affirmed.