### Rains v. Kentucky Oil Company, et al.

(Decided October 16, 1923.)

Appeal from Whitley Circuit Court.

1. Mines and Minerals—Lessor Held Entitled to Share in Value of Gas at Well Side.—Under a lease entitling lessor to one-eighth of gas produced, the lessor was entitled to one-eighth of the fair

market value of the gas at the well side, and not the price received for it in town.

2. Mines and Minerals—Drilling of Wells Held Compliance With Lease.—The drilling of three wells on a 300-acre tract, from which a substantial amount of gas is obtained, was a substantial compliance with the terms of a lease requiring the drilling of wells, where there is no showing that the supply of gas on the leased premises has been diminished by the drilling of other gas wells on contiguous territory.

H. C. GILLIS and B. B. SNYDER for appellant.

TYE & SILER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On March 2, 1916, G. W. Rains and wife executed to E. C. Disel an oil and gas lease on a tract of land in Whitley county containing about 300 acres. Among the provisions of the lease were the following:

"Should oil be found in paying quantities upon the premises, second party agrees to deliver to the first party . . . in the pipe line with which it may connect the well or wells, the one-eighth (1/8) part of all the oil produced and saved from said premises.

"If gas only is found, second party agrees to pay fifty dollars or 1/8 dollars each year for the product of each well while the same is being used off the premises, and first party shall have gas free of expense to light and heat the dwellings now on the premises.

"No well shall be drilled nearer than 200 feet to the house or barn on said premises, and no well shall occupy more than one acre.

"The second party shall have the right to use sufficient gas and water to run all machinery used by him in carrying on his operation of said premises, and the right to remove all his property at any time.

"If no well is commenced within one year from this date, then this grant shall become null and void unless second party shall pay to the first party . . . dollars for each . . . thereafter that such completion is delayed.

"The terms of this instrument shall be for fifteen years from date hereof, and so much longer as oil and gas shall be found in paying quantities. In case no well is drilled and no rental paid, as above specified, then this instrument shall be void and terminate at the option of either party."

On February 20, 1919, Disel assigned all his right in the west half of the leased premises to the Kentucky Oil Company. After two gas wells had been developed on the west half of the leased premises, the Kentucky Oil Company sold the gas to the Raymond-Hadley Corporation at six cents per one thousand cubic feet. The Raymond-Hadley Corporation, which had acquired a franchise from the city of Williamsburg, piped and marketed the gas from the premises, together with other gas from wells on other properties, to the citizens of Williamsburg at the price of 42 cents per one thousand cubic feet. The total expense of providing a pipe line and marketing the gas was something over $125,000.00.

This suit was brought by Rains against the Kentucky Oil Company, the Raymond-Hadley Corporation and E. C. Disel to recover the rent or royalties due on the lease, and to cancel the lease on the undeveloped portion of the premises. The chancellor fixed the rent due plaintiff at $400.00 and declined to cancel the lease. Plaintiff appeals.

The first question to be determined is what rent or royalty appellant was to receive. It appears that the words, "fifty or 1/8," were written with pen and ink in a blank in a printed form between the words "pay" and "dollars." Appellant contends that it was the intention of the parties that the lessee should pay $50.00 for the products of each well each year, or one-eighth of the selling price of the gas in Williamsburg. The argument is that the lease should be construed to mean that the lessee was to pay something in dollars; that one-eighth does not mean one-eighth of a dollar, and that the only reasonable construction is that one-eighth means one-eighth of the selling price of the gas. In other words, appellant was to receive one-eighth of the gas furnished to the citizens of Williamsburg, just as he would receive one-eighth of the oil in the pipe line if oil had been discovered. While there is an allegation that the real contract between the parties was that appellant should receive a minimum of $50.00 each year for each gas well, or one-eighth of the gross proceeds from the sale of the gas in case that exceeded the minimum, and that by mutual mistake of the parties the contract did not set forth the agreement so made, the evidence is not sufficiently clear and convincing to establish this contention. It goes no further than to show that appellant was to receive $50.00 for each well or, at his option, one-eighth of the gas. In the absence of any

clear understanding on the subject, the question is, should the contract be construed as requiring the lessee to pay one-eighth of the gas at the wells, or one-eighth after it is delivered in Williamsburg? It is the custom to pay one-eighth of the oil in the pipe line, but there is a wide difference between the delivery of oil in the pipe line, and the delivery or marketing of gas to the individual consumers in a city. The latter is generally conducted as an independent business, and is attended by a very large expense in the obtention of the franchise and the distribution of the gas. While the lessee of a gas well may be under the duty of using reasonable effort to market the gas, we are not inclined to the view that this duty, in the absence of a contract to that effect, is so exacting as to require him to market the gas by obtaining a franchise from some town or city and distributing the gas to the inhabitants thereof. On the contrary, he fully complies with his duty if he sells the gas at a reasonable price at the well side to another who is willing to undergo the risk of expending a large amount of money for the purpose of distributing the gas to the ultimate consumers. We are therefore constrained to the view that under the contract in question appellant was entitled to either $50.00 a year for each well or to one-eighth of the fair market price of the gas at the well side.

The chancellor fixed the rent or royalty due appellant at $400.00, and after a careful consideration of the entire record, we are unable to say that the amount allowed is too small.

The lease was to continue for a period of fifteen years, and as long thereafter as oil and gas were discovered in paying quantities, with the further provision that if no well was drilled and no rental was paid, the lease should be void and terminate at the option of either party. While the lease provides that no well shall be drilled nearer than two hundred feet of the house or barn on the premises, and that no well shall occupy more than one acre, there is no requirement that any certain number of wells should be drilled or that the wells were to be located at any particular place. As the lessee has gone to great expense in the development of the property and has drilled three wells from which a substantial amount of gas is obtained, and there is no showing that the supply of gas on the leased premises has been diminished in the least by the drilling of other gas wells on contiguous territory, it

cannot be doubted that there has been a substantial compliance with the terms of the lease, and that no cause for forfeiting the undeveloped premises was shown. Hughes v. Busseyville Oil & Gas Co., 180 Ky. 545, 203 S. W. 515.

Judgment affirmed.