## Flanigan, et al. v. Stern.

(Decided October 10, 1924.)

### Appeal from Warren Circuit Court.

1. Mines and Minerals—Time is of Essence of Oil Lease.—In oil leases, because of fugitive nature of substance to be extracted, time is of essence of contract, and it is duty of lessee to begin performance of obligations as to drilling within time agreed upon, and prosecute work with reasonable diligence.

2. Mines and Minerals—Mere "Spudding in" did Not Keep Lease Alive—When Work Not Prosecuted Diligently.—Mere "spudding in" of oil well did not keep lease alive and prevent its forfeiture, even if considered as commencement of well, where lessee did not prosecute work with reasonable diligence; this being impliedly required by lease.

3. Mines and Minerals—Failure to Reasonably Prosecute Drilling of Well Cannot be Excused by Blaming Independent Contractor. —Lessee cannot excuse failure to prosecute drilling of well with reasonable diligence by laying blame on independent contractor employed by him to drill well.

4. Mines and Minerals—Lessee Held to have no Right to Keep Lease Alive on Portion of Premises by Relinquishing Part of Premises to Third Party.—Lessee in oil lease authorizing parital assignments held to have no right to keep lease alive on any portion of premises by relinquishing to third party, without consideration and without any bona fide assignment, such portions of lease as he found himself unable to retain by payment of required rent.

JOHN B. RODES, RODES & HARLIN and JOHN D. CARROLL for appellants.

W. D. GILLIAM for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing on the appeal and affirming on the cross-appeal.

The appellee and plaintiff below, Kenneth Gibson Stern, filed this equity action in the Warren circuit court against the appellants and defendants below, James P. Flanigan and H. M. Bryant. He alleged in his petition that he was the owner of the right to operate for oil and

gas on 82½ acres of land in Warren county, which was owned in fee by defendant, Bryant, from whom plaintiff obtained his leases and that Flanigan, with the consent and at the instance of Bryant, forcibly entered upon the land and drilled an oil well and was claiming to be the owner of the exclusive privilege to take oil and gas from the land, and plaintiff prayed that his title to his alleged leasehold rights be quieted and for a judgment of ouster against Flanigan and the recovery against defendants of a judgment for $2,000.00 damages representing the value of oil that had been taken from the well drilled by Flanigan. The joint answer of the defendants denied all of the alleged grounds for relief, and after taking proof the cause was submitted to the court, followed by a judgment sustaining plaintiff's title to the leases and quieting it, but denying him any money judgment against defendants. From so much of the judgment as adjudged plaintiff the owner of the mineral interest, defendants prosecute this appeal, and plaintiff has prayed and obtained in this court a cross-appeal from that part of the judgment denying him a recovery for the value of the oil extracted from the land.

Plaintiff avers in his petition that on February 5, 1923, he obtained from Bryant one of the leases under which he claims and which was on 20 acres of Bryant's entire tract of 102 acres, and that on the 15th of the same month he obtained a similar lease upon and covering the remaining 82 acres. But, according to the record, he did not establish title to the 20 acres, although the answer put his title in issue. It is true he filed, and there is copied in the record, a lease from Bryant and wife of date February 5, 1923, conveying the right of exploration for oil and gas on that 20 acres, but plaintiff was no party to that lease, and on its face it was executed by Bryant and wife to Potter-Matlock Trust Company, as lessee, and was signed only by the same parties, plaintiff's name nowhere appearing therein, nor does it in any way appear or is it in anywise claimed that the named lessee therein sold or assigned the lease to plaintiff. It may be that the discrepancy is due to some clerical mistake by some one connected with the preparation of the record, and that suggestion is somewhat fortified by the fact that all parties treat the case as though that lease, or a similar one, was executed by Bryant to plaintiff; and we will determine the questions involved as though such was the fact.

Each lease was no doubt executed on a prepared form since they are identical in phraseology, except the description of the premises, the time within which the well should be commenced, and the rent to be paid upon failure to do so. It is provided in the 20-acre lease that "If no well be commenced on said land on or before the first day of May, 1923, this lease shall terminate as to both parties, unless lessee on or before that date shall pay or tender to the lessor (or to his credit in a named bank as collector) the sum of $200.00, two hundred dollars," which it was stipulated should operate as a rental and cover the privilege of deferring the commencement for a period of two months, and that upon a similar payment at the expiration of the extended period a like extension would be given. The same provision was contained in the lease of the 82 acres, with the modification that the well should be commenced on or before the 16th day of April, 1923, and for a failure to do so the lessee should pay $82.00 for deferring the commencement for a period of *three* months, with the privilege of continuing the postponement by the payment of similar sums for each succeeding three months. Both leases provided for the right of each party to assign their respective interests or parts thereof; and as to the lessee, it was also provided that his retained interest should not be affected by any defalcations of his assignee or assignees provided he himself complied with his leasehold obligations as to its unassigned portions.

On March 13, 1923, plaintiff entered into a contract with John P. Laffaty, a well driller, under the terms of which the latter agreed upon certain conditions to drill a well on the 82 acres, and about five days thereafter Laffaty moved his rig thereon and located the place to drill and sunk his drill into the ground to a depth of from four to six feet, which sinking, according to the testimony in the record, is described and generally known in drilling operations as "spudding in," and is universally regarded as only a *gesture* towards drilling a well. It seems that, after going beyond the depth of a "spud in," it is necessary to have casing and that no substantial progress can be made without it. On or about the day the "spud in" was made, plaintiff received a telegram from New York city informing him of the death of his father and he immediately went there and did not return to Bowling Green or to Kentucky until about September first, a space of nearly six months. It is overwhelmingly

shown that he had agreed with Laffaty to make certain payments as the drilling progressed and to furnish the casing; but he did neither, nor did he pay $30.00 of the $45.00 expenses in moving the drilling rig to his lease as he had agreed to do. Laffaty waited thirty-three days for plaintiff to perform his agreements in the drilling contract, during all of which time his machinery was set ready to proceed; but, obtaining no word from plaintiff, except a request for him to proceed at his own expense, he, at the expiration thereof, removed his equipment from the premises. That plaintiff's failure to furnish the material and the money which he had agreed to do in the drilling of the well was due to his inability to procure the funds, is overwhelmingly proven, and we do not deem it necessary to recite the evidence in support thereof. In fact, no other reasonable conclusion could be reached from the plaintiff's own testimony.

It is the insistence of his counsel that the "spudding in" of the drill was a *commencement* of a well within the meaning of the lease contract and that the lease was thereby kept alive, and that Bryant had no right to treat it as forfeited thereafter and to re-lease the premises to Flanigan, which contention, if true, as it will be observed, takes no cognizance of the duty of the lessee, under such obligations, to prosecute the drilling with reasonable diligence in order to preserve his rights. We have frequently held, following the general rule upon the subject, that in oil leases, because of the fugitive nature of the substance to be extracted, time is of the essence of the contract, and, by analogy, that it is the duty of the lessee under such a contract to begin the performance of his obligations as to the drilling within the time agreed upon *and* prosecute the work with reasonable diligence. One of the latest cases so declaring is that of Bell v. Kilburn, 192 Ky. 809. Other late ones are: Jenkins v. Williams, 191 Ky. 165, and Niles v. Meade, 189 Ky. 243. A number of others from this and other courts, as well as text authorities could be cited in support thereof. The fundamental reason for such a holding is that because of the peculiar nature of the substance, the lessor might be deprived of his royalty profits on account of the oil under his land being drained by surrounding wells, and that the chief purpose of the parties to such a contract was the development of production as speedily as possible under the prevailing circumstances and conditions. If, therefore, we should concede for the purposes of this case that

the mere "spudding in" of the drill by Laffaty, the contractor, should be considered as the commencement of a well within the meaning of the contract, it was still the duty of plaintiff to prosecute the work with reasonable diligence and to make a *bona fide* effort to consummate the intention contemplated by the parties in the execution of the lease; and if he negligently failed to do so the forfeiture provided for would automatically follow. Cases relied on by plaintiff's counsel are not in conflict with what we have said, since each of them was determined upon its peculiar facts and the particular phraseology of the leases involved, in some or all of which there was no forfeiture clause, or if one it was not of automatic operation under the employed terms of the contract. Here the language is that, unless the commencement of the drilling of a well (and the reasonably diligent prosecution thereof as we have herein held) are each performed according to the expressed and necessarily implied intention of the parties the "lease shall terminate as to both parties."

There was not only an utter failure to exercise diligence in the prosecution of the work of drilling the well for a continuous period of thirty-three days after the drilling machinery had been set up, but at the expiration of that time it was moved off the premises and the undertaking was at least temporarily abandoned. But, it is insisted that the derelictions in that regard may not be charged to plaintiff, because Laffaty, as it is also insisted, was an independent contractor and for whose shortcomings the plaintiff may not be charged. This contention is to our minds so groundless and so completely without merit that it seems useless to spend time in its discussion. If that contention were true, it would not only unhinge the law with reference to the reponsibility of an employer for the acts and omissions of an employe, but it would likewise enable all lessees in contracts of this character to indefinitely postpone the performance of their obligations to drill a well by employing an independent contractor to merely start it and then cease operations for such periods and at such times as he saw proper and thereby preserve his rights under the lease, which would nullify all of the declared law with reference to diligence in such contracts, and at the same time enable an insolvent or indifferent lessee to deprive the lessor of the chief benefits of his contract. There is no case cited, and we are sure none can be found sustaining such contention.

It is, therefore, our conclusion that the court erred in adjudging plaintiff any rights in and to the oil and gas under the 82 acres.

Some time prior to the leasing of the 20 acres by plaintiff, a well had been sunk thereon to a depth of 975 feet, but it had been abandoned. Under the right reserved in the deed to assign any portion of the lease free from the responsibility of the assignee failing to comply with its terms, plaintiff claimed that he assigned 19½ acres of the 20 acres to a man in Newark, N. J., by the name of Fisher, reserving to himself one-half acre upon which, as he contends, was located the abandoned well. Without notifying Bryant of any such pretended assignment he thereafter sent to the designated bank for the payment of the rental in case no well was commenced in time, checks for $5.00 each, which he claimed was in payment of the privilege to defer the commencement of the well on that half acre under the terms of the lease. Upon being interrogated about that assignment, he was forced to say that Fisher, who was a friend of his, paid him nothing therefor and that "I just gave him the 19½ acres." He made no positive statement that there was ever any actual written assignment of any portion of the lease, nor did he recollect whether he signed any such writing or if so whether he acknowledged it. He kept no copy thereof nor did he produce or offer to produce Fisher as a witness in his behalf. No assignment was ever recorded in Warren county, and upon the whole it is patent that the alleged assignment of the 19½ acres to Fisher was either a myth or a fraud; and the conclusion is inevitable that plaintiff could not procure the necessary $200.00 with which to pay the first rental and that he resorted to the alleged assignment scheme in order to preserve the abandoned well.

It is insisted by counsel for defendants that the terms of the contract contemplated a notice to the lessor of the assignment of any particular portion of the leased premises so that he might shape his conduct thereafter in conformity therewith, and, to say the least of it, there would appear to be strong, logical support for that position; but whether it be correct or not, we need not determine, since we are thoroughly convinced that plaintiff had no right to keep the lease alive on any portion of the premises, which he might select by relinquishing, *without consideration* and without any *bona fide assignment,* such portions of the lease as he found himself unable to

retain by the payment of the required rent. The right of assignment given to the lessee under the lease contemplated a *bona fide* assignment of described and designated portions of the lease, and there is no proof that any such was made in this case. Were the rule otherwise plaintiff in this case, and other lessees adopting a similar course, could relieve themselves of the payment of any part of the obligated rent by giving away the greater undivided part of the leased premises and retaining an insignificant portion which they deemed most valuable, and thereby reducing the amount of rent required to be paid by him in order to keep his remaining holdings alive. The law has no other name for such conduct except that of a fraudulent scheme never contemplated by the parties and never enforced by the courts. It is, therefore, clear that the court erred in adjudging plaintiff any rights in and to any portion of the 20-care tract.

Wherefore, the judgment is reversed on the appeal and affirmed on the cross-appeal with directions to dismiss the petition.