## Sawyer v. Potter, et al.

(Decided February 28, 1928.)

### Appeal from Elliott Circuit Court.

Mines and Minerals.—In action to quiet title in oil and gas lease, evidence held to authorize finding that well drilled by sublessee was not a producing well within provision for extension of lease, if oil or gas were found, nor accepted as such by parties, so that court properly dismissed petition and quieted title in assignees of one to whom lessors executed top lease after expiration of original lease.

M. M. REDWINE and JOHN T. REDWINE for appellant.

W. E. MOBLEY and S. S. WILLIS for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

On April 14, 1917, John M. Ison and wife executed an oil and gas lease on 800 acres of land to James E. Hogan for a term of ''five years from date, and as much longer as oil or gas is found thereon.'' Lessor was to receive one-eighth of the oil produced, and $100 per

annum for each producing gas well while gas was being sold off the premises. Provision was made for a well to be drilled in twelve months or payment of a royalty of 25 cents per annum per acre, in default of which a forfeiture was provided. The lessor was authorized to take over a nonproducing well upon payment of the actual cost of the casing. The lease also expressly provided for a division of the premises and an assignment in whole or in part. By mesne conveyances the entire lease was assigned to W. G. Sawyer some time that year. On the 16th of April, 1922, John M. Ison and wife, in consideration of $2,000, executed a top lease on the entire boundary to James M. Potter, and on November 1, 1923, Sawyer filed this action against James Potter and these appellees as assignees of Potter to quiet his title in the lease. The petition showed that the top lease was not executed until after the expiration of the original lease, and, aside from legal conclusions, offered no ground for an extension of the lease beyond the five-year period. However, without demurring, appellees filed answer traversing the allegations of the petition and pleading affirmatively the expiration of the original lease before the execution of the top lease and an abandonment of the lease by plaintiff.

The facts are substantially these: Sawyer subleased 200 acres of the above boundary to the Kentucky Producers Oil Company and that interest came by mesne conveyances to the Progressive Oil Company, who in the year 1919 drilled a well through the carboniferous sand, bringing in a light gas well. It was not in marketable quantities, but was piped to the residence of John Ison and one or two others, though it does not seem to have been in sufficient quantities to have furnished fuel for more than one family. The parties drilling the well abandoned it, and sold the material to Ison, and left the state. Later the well was sold in payment of their taxes, and purchased by Ison; no further royalties being paid on the property.

About the 1st of April, 1922, James Potter, a remote assignee of the Kentucky Producers Oil Company, moved upon the subdivision east of Newcomb creek, and began drilling another well. Appellees claim that Ison objected to this, while he avers that he was willing for Potter to drill east of Newcomb creek, and only objecting to him drilling west of that creek on a territory to which he had

no title. At any rate, this well had been drilled only a few hundred feet at the end of the five-year period April 13, 1922, and a question arose as to whether the lease had expired. Ison sent to Potter to negotiate for a new lease. Potter consulted an attorney, who advised him that the Hogan lease had expired, whereupon the negotiations were completed, and Ison executed a new lease on the entire body of land to Potter in consideration of $2,000; $1,000 in cash, and a note for $1,000 additional. Potter and two of the appellees to whom he had assigned an interest in the lease completed well No. 2, it being a light oil well, and later drilled well No. 3 with a better showing. These two wells were attached to the pipe line, and have since been producing about five barrels of oil per day; Ison receiving his one-eighth royalties therefrom. At the maturity of the $1,000 note executed by Potter, Ison brought suit thereon to subject the lease to its payment. Appellees paid this, and subjected Potter's interest in the lease to sale under execution, and purchased same. Sawyer disclaims title to the 200 acres east of Newcomb creek, but claims that the development in that area inured to the benefit of the entire boundary, and that it had the effect of extending the lease and perpetuating his title to the 600 acres west of the creek. The circuit court seems to have been of the opinion that no oil or gas was produced during the five-year term of the lease in sufficient quantities to extend its life beyond that period, and decided in favor of defendants. Plaintiff appeals.

Appellant cites many authorities applicable to forfeiture of leases, and insists that under the facts stated John M. Ison had no right to declare a forfeiture, and that his assignees cannot insist upon one. However, that question is not before us, as appellees are not relying on a forfeiture. Their position is that the lease ended by its own terms on the 13th of April, 1922, and that Sawyer had no further interest therein. True, the lease was to continue after the five-year period, "if oil or gas was found" and it is claimed that well No. 1 drilled in 1919 produced some gas, and, regardless of the amount produced, so long as this continued, the lease was extended, and that in this respect this lease is to be distinguished from similar leases in which the words "in paying quantities" are used. That question is not a new one in this state. In Reynolds v. White Plains Oil & Gas Co., 199 Ky. 243, 250 S. W. 975, in construing a

similar lease wherein the expression "in paying quanti-
ties" was not employed in the contract, we said:

> "The production must be substantial and suffi-
> cient to pay the lessor a royalty justifying the ob-
> struction and interference which he suffers as a
> result of the occupation and operation on his prem-
> ises"

—citing Enfield v. Woods, 198 Ky. 328, 248 S. W. 842, in
which we said:

> "It will be observed that the lessee is not re-
> quired in specific terms to produce oil in 'paying'
> quantities,' but he is required to produce oil or gas,
> one or the other, from the premises. This, of course,
> means a production of oil or gas in such quantities
> as to be susceptible of division, so as to pay the land-
> owner a royalty, even though small. A mere show-
> ing of oil manifestly is not sufficient even though pro-
> duced. The production must be tangible and sub-
> stantial."

Ison now says that he considered the production of
gas as a fulfillment of the original lease contract, and was
satisfied with the amount of gas received by him, and
that he still regards the Sawyer lease as in effect, and
great stress is laid upon his position, but we do not
regard this as conclusive. If he actually accepted the
gas as production in conformity with the terms of the
lease, and had notified Potter of this fact, the court might
be inclined to adopt the construction that the parties
themselves placed on their contract, but he did not
do this. True, in the Potter lease he did not warrant
the title as against the former lease. As that lease had
already been recorded, Potter had constructive notice of
it. He also had notice of the amount of gas that well
No. 1 was producing, but it will be observed that the
former lease provided for the payment of $100 per annum
for each producing gas well, while being marketed, being
an indication of what the parties deemed a producing gas
well. Ison had not intimated to him that he had accepted
it as being a producing well, but, on the contrary, was
insisting that the original lease had expired by its own
terms, and executed a deed therefor to him, and charged
and received therefor the sum of $2,000.

Under these facts the circuit judge was clearly authorized to find that the well in question was not a producing well within the terms of the contract, and that it had not been so accepted by the parties. It follows that the (plaintiff) appellant failed to show title to the lease and the court properly dismissed his petition. Leach v. Taylor, 206 Ky. 28, 266 S. W. 894; Varney v. Orinoco Mining Co., 201 Ky. 571, 257 S. W. 1016. Also the evidence authorized the judgment quieting the title of appellees therein. It is further urged that, even if well No. 1 had been a producing well, nevertheless it was drilled on a sublease which had been severed from the remainder of the tract, and that such development would not inure to the benefit of other subdivisions of the original lease, but, in view of the above conclusions, we do not find it necessary to determine this question.

Wherefore, perceiving no error, the judgment is affirmed.