## Swiss Oil Corporation v. Risner, et al.

(Decided March 2, 1928.)

Appeal from Magoffin Circuit Court.

1. Mines and Minerals.—Where lessee had expended $6,462.50 in sinking oil well on leased land and had obtained therefrom $1,700 worth of oil, and production of well was less than barrel per day and there was not another producing well within half mile of property, although number of dry holes were drilled in vicinity, and lessor under terms of lease asked that lessee drill offset well in addition to other developments or that rights under lease be terminated, held that lessee was not required to drill well because lessor wanted one drilled, but was only required to do such drilling as reasonably prudent man would do under circumstances.

2. Mines and Minerals.—Lessee of oil land acting in good faith is ordinarily judge of whether the productiveness of property is sufficient to require or warrant further development and operations.

3. Mines and Minerals.—Where oil or gas has been found in paying quantities on oil land, question of what further development and exploration is required under lease is not subject to determination by either of parties alone, but both are bound by standard of what is reasonable; that is, what would be reasonably expected of operators of ordinary prudence having regard to interests of both lessor and lessee.

4. Mines and Minerals.—Where oil or gas has been found in paying quantities and although lessee acts in good faith in developing land as required by lease, yet if he does not act as reasonably

prudent man in determining extent to which he should develop premises, he is liable for breach of covenant.

E. L. McDONALD and KIRK, KIRK & WELLS for appellant.

W. R. PRATER for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

Patrick Risner sought by this action against the Swiss Oil Corporation to secure the cancellation of an oil and gas lease it held on his property. He was successful, and the Swiss Oil Corporation has appealed. On August 2, 1917, Patrick Risner, et al., executed to E. L. Stephens what is known as an oil and gas lease, for which there was paid to Risner et al. $100 in cash, and this lease contained this provision:

"If no well be commenced on said land on or before the 2d day of February, 1918, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender to lessor in the manner hereinafter provided, the sum of $100, which shall operate as a rental, and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner, and upon like payment or tenders, the commencement of a well may be further deferred for like period of the same number of months successively."

By mesne assignments this lease came into the ownership of L. C. Young, of Lexington, Ky., and on July 6, 1922, a supplemental agreement was signed between the Risners and L. C. Young, in which it was recited that no well had been commenced on the premises, and in this supplemental agreement we find this:

"L. C. Young and the parties through whom he obtained title to the lease have kept the lease in full force and effect by making the $100 payment each year provided for in the lease to cover the privilege of deferring the commencement of a well."

Further in this agreement, we find:

"The parties of the first part for and in consideration of the premises and $300 cash in hand paid to them, receipt of which is hereby acknowledged, have

agreed to and do hereby extend the aforesaid lease to the party of the second part, his heirs and assigns, for a period of 90 days after the date on which it would expire if this extension were not given, it being understood and agreed by and between the parties of the first part and second part that if the said party of the second part or his heirs and assigns shall commence a well upon said premises within a period of 90 days from date when said lease would expire without said extension that said party of the second part, his heirs and assigns, shall be entitled to all of the rights and privileges under said lease the same as they would have been if said well had been commenced within the time prescribed on the original lease.''

These are the only provisions contained in either the original lease or the supplemental agreement relative to explorations on the premises. By other mesne assignments this lease has passed to and is now owned by the Swiss Oil Corporation, and there is now a well on the premises that has produced about a barrel a day. Thinking that further explorations and developments should be made, on the 14th of January, 1924, Risner served the following notice on the Swiss Oil Corporation:

"It appearing that you are the owner and holder of an oil and gas lease on the farm and lands owned by the complainants, terms, conditions and stipulations are fully set forth in the said lease; and whereas, you have failed to comply with the agreements, terms, conditions and stipulations set forth in the said lease by failing to develop the said lease, and drilling for oil and gas, and producing the said oil and gas as required by the terms of the said lease:

"Now, you will therefore take notice that the complainant requires and demands that you at once develop the said lease and drill in, on the premises one offset well in addition to the other developments, production and marketing of the said products.

"Given under my hand, this the 10th day of January, 1924.

"PATRICK RISNER, Complainant.''

The Swiss Oil Corporation made no further developments, and on June 30, 1924, Risner began this action.

The Swiss Oil Corporation made two defenses. One was that there are other parties interested in this oil and this property besides Patrick Risner. The other was that a well had been drilled on the premises which was thereafter completed and equipped, and which has since been operated by pumping it regularly and obtaining therefrom all of the production of oil to be obtained by reasonable operation of it. It made its answer a cross-action against certain parties named therein, who, it alleged, had an interest in this property, and it sought to have its title quieted. We are expressing no opinion on that branch of the case, however, nor upon the sufficiency of the notice signed by Risner alone, when there were admittedly other parties interested in this property and in the royalties, because we have reached the conclusion from the evidence that Risner did not show himself to be entitled to the relief he asked. In 40 C. J. p. 1065, we find this:

"In accordance with the rules as to good faith and diligence, discussed above, where the lease reserves substantial royalties or rentals, but is silent as to the extent of the development to be made, there is an implied obligation on the part of the lessee, after the discovery of oil or gas, or both, in paying quantities, to proceed in good faith and with reasonable diligence fully to develop the property by putting down as many wells as may be reasonably necessary to produce oil or gas for the common advantage of both the lessor and lessee, and a failure to do so amounts to an abandonment of the lease, and also renders the lessee liable for the resulting damages. This obligation exists notwithstanding the lease provides for the sinking of but one well within a specified time; but it does not require the lessee to put down more wells than are reasonably necessary to obtain the oil of his lessor, or to put down wells that will not produce oil enough to justify the expenditure."

The proof shows that there has been expended on this property, in the sinking of this well and the pumping of it, $6,462.50, and the Swiss Oil Corporation has obtained therefrom about $1,700 worth of oil. The production of the well is now less than a barrel a day. There is not another producing well within one-half mile of the

property, although a number of dry holes have been drilled in this vicinity. In his notice, Risner asked that the Swiss Oil Corporation be required to drill an offset well in addition to other developments; but the evidence does not disclose the existence of a producing well on any adjoining land to which any offset well is necessary. Although Risner would not have to spend or risk one dollar in such further development, he insists that the rights of the Swiss Oil Corporation have been terminated because it did not, when he served this notice upon it, proceed to drill other wells.

If a lessee acts in good faith, he is ordinarily the judge of whether the productiveness of the property is sufficient to require or warrant further development and operations. 40 C. J. 1066. But where oil or gas has been found in paying quantities, the question of what further development and exploration is required under the lease is not subject to determination by either of the parties alone; as the object of the operation is to obtain a benefit or profit for both the lessor and the lessee, both are bound by the standard of what is reasonable, that is, what would be reasonably expected of operators of ordinary prudence, having regard to the interests of both lessor and lessee, and, although the lessee acts in good faith, if he does not act as a reasonably prudent man in determining the extent to which he would develop the premises, he is liable for a breach of covenant. The evidence does not disclose the existence of a situation here that would induce any reasonably prudent man to make further development at this time, and the evidence does not show enough to sustain the cancellation of this lease.

"   . . .  In such leases it would seem that, inasmuch as the lessee incurs all of the hazardous outlay, he should be the one to be favored rather than the other party to the lease who does nothing but cogitate over his contemplated royalties and collects and enjoys them after they come." Union Gas & Oil Co. v. Wiedeman Oil Co., et al. 211 Ky. 361, 277 S. W. 323.

See, also, Austin v. Ohio Fuel Co., 218 Ky. 310, 291 S. W. 386; Rains v. Kentucky Oil Co., 200 Ky. 480, 255 S. W. 121; Hughes v. Busseyville Oil & Gas Co., 180 Ky. 545, 203 S. W. 515.

The lessee is not required to drill this farm as full of holes as a pepper box, or to drill a hole merely

because Risner wants one drilled. It is only required to do such drilling as a reasonably prudent man would do under the circumstances. As the lessee must put up the money, and take the risks when this drilling is done, it is entitled, so long as it acts prudently and in good faith, to determine whether or not additional drilling is necessary.

There is no showing made that additional drilling was necessary in this case, and the judgment cancelling this lease is reversed.